A truck owned by the late P.M. Atkins of Monroe, Louisiana, driven by Bill Cleveland, an employee, a large moving van, owned by Sloan's Moving Storage Company, a Missouri corporation, driven by its employee, Herman Sweeney, and an ambulance driven by one C.G. Gunby, were involved in a daylight accident on Highway No. 80, a short distance west of the settlement of Dunn, Louisiana. The van and the truck were going westerly, the former being in the rear. The ambulance was traveling easterly. Riding as guests in the cab of the truck which pulled the van, were plaintiffs, Paul Kearns and his wife, Frances Kearns, residents of the State of Texas. The van-truck and the ambulance collided head-on and plaintiffs were injured. They sue to recover damages for the pain, suffering, etc. experienced by them, and for physicians' bills incurred to relieve their injuries.
Herein we shall refer to the vehicle driven by Cleveland as the "truck" and that driven by Sweeney as the "van".
In addition to the operators and owners of the truck and van, the Employers' Liability Assurance Corporation, Ltd., carrier of public liability insurance on the truck, the United Van Lines, Inc., alleged co-owner of the van, and Travis Oliver, Sr., alleged co-owner of the truck, were impleaded as defendants.
Prior to joinder of issue, the suit as to Mr. Oliver was dismissed. Joining him as defendant was error as he had no interest in the truck nor was Cleveland, its driver, his agent or employee. After joinder of issue and on day of, but prior to beginning the trial, suit was dismissed as to all other defendants save Atkins, Cleveland and the Employers' Liability Assurance Corporation, Ltd. The remaining defendants thereupon filed what is denominated "a plea of waiver" wherein it is averred that plaintiffs have compromised whatever right and cause of action they held against the dismissed defendants, save Oliver, alleged joint tort-feasors with movers, thereby releasing movers from liability, if any existed. The plea was *Page 508 
overruled. It is not insisted on here and the same may be said of overruled exceptions of no cause and no right of action.
Plaintiffs exonerate the ambulance operator of any negligence in connection with the accident. The concurring gross negligence and carelessness of the drivers, Cleveland and Sweeney, in these respects is accredited with the accident, to-wit:
That Cleveland, while being closely followed by the van, without giving warning of his intention so to do and without ascertaining traffic conditions behind him, suddenly "started bringing his truck to a sudden stop without moving same off of the highway; that due to the fact that Herman Sweeney's truck (van) was so close to that driven by Bill Cleveland, he could not stop same in time to avoid a collision; * * * that Herman Sweeney, being confronted with an emergency due to gross negligence and carelessness on his part as well as on the part of Bill Cleveland, saw that he would be unable to bring the truck (van) to a stop before running into the rear of the truck driven by Cleveland, cut and drove the van * * * suddenly and without any warning whatever, in a highly careless and negligent manner without first looking to see if any traffic were approaching from the west * * *, on to his left side of said highway * * * directly into the path and in front of an ambulance driven by C.G. Gunby."
It is additionally alleged that Cleveland's truck was overloaded and that the load prevented him from observing through its rear view mirror traffic conditions behind him. It is also alleged that immediately prior to the accident Sweeney was driving at the reckless speed of approximately sixty miles per hour.
Defendants deny that Cleveland was negligent or careless to any degree in the operation of his truck prior to or at the time of the accident, and charge that the accident was due solely and only to the fault and negligence of Sweeney and the independent and concurring negligence of plaintiffs. They further aver that when a short distance west of the Dunn settlement, Cleveland, then traveling at a moderate speed, noticed that the pressure in one of the tires of his truck was diminishing; that he thereupon extended his left arm and hand as a signal of his intention to stop, and gradually began reducing the truck's speed, at the same time turning at a slight angle to the right preparatory to executing a complete stop on the road's shoulder; that as the right front wheel left the concrete slab the large van, traveling at an excessive speed, passed to his (Cleveland's) left and collided with the ambulance. In the alternative, it is pleaded that plaintiffs' own negligence contributed to the accident as a proximate cause thereof and for this reason, they are precluded from recovery.
After trial and submission of the case but prior to rendition of judgment, P.M. Atkins died testate. The executor of his succession, W.L. Ethridge, was substituted as defendant.
The lower court awarded judgments for plaintiffs and gave written reasons therefor. Defendants prosecute this appeal.
The lower court found and held that the truck began to slow down preparatory to stopping; that the van pulled to its left to go around the truck and collided with the ambulance; that the truck at the time had practically come to a stop; that Sweeney was negligent but that plaintiffs were free of contributory negligence as a cause of the accident. Cleveland was convicted of gross negligence in the operation of his truck in this language, to-wit:
"As to Bill Cleveland, driver of the truck, we think that he was guilty of negligence, which contributed to the wreck. He was also driving a vehicle which called upon him to use extreme care. He admits that the body of his truck extended from one to one and a half feet on each side beyond the cab. He says that he was slowing down preparatory to stopping; that he did not look to see if any vehicle was near him to the rear, but merely held out his arm to signal a stop. There is some conflict as to whether or not he could see to the rear through his mirror, but this is of no importance since he states that he did not attempt to look behind him, and actually did not know the van was behind him until it got about even with his truck. He was meeting an ambulance coming in the opposite direction, which he saw or must be held to have seen.
"Under the above circumstances, and especially when he was in the act of meeting an on-coming car we think it was extremely negligent of him to materially diminish the speed of his vehicle without first ascertaining in some way whether or not there was any traffic behind him that might be affected. He simply relies upon *Page 509 
the fact that he gave an arm signal to stop. We think it a driver's duty in all cases to observe to the rear as well as to give the proper signal. In this case where at least one foot of his arm could not be seen from behind we think it wanton recklessness for him to have depended upon an ordinary arm signal without taking any other precaution whatever.
"We also think that the truck driver was negligent in bringing his car to a stop while still entirely on the pavement. He states that the two right wheels were off the pavement on the shoulder, but the witnesses who arrived immediately afterwards say that all four wheels were still upon the paved portion of the road. He had almost if not quite come to a stop, and all four of his wheels should have been off the pavement and on the shoulder."
The highway east and west of the locus of the accident is straight for a mile or more. It is surfaced by a concrete slab eighteen feet wide, with shoulders on each side. The collision occurred about one hundred feet west of a culvert in the road. Cleveland's truck was traveling not more than thirty-five miles per hour. It was of one and one-half ton factory capacity but was carrying a load of fifty sacks of fertilizer weighing one hundred pounds each. Its over-all length is about twenty feet. The van, with truck, is thirty feet long. The van itself is twenty feet long, seven feet four inches wide and several feet high. When empty it weighs 11,000 pounds and at the time of the accident was carrying a load of 6,000 pounds. It had closely trailed the truck for a mile or more and over that distance, according to the testimony of its occupants, maintained a distance of from forty feet to eighty feet from the truck. Its speed was around forty miles per hour.
After a close study of the testimony we make the following findings of fact, in addition to those above set out, to-wit:
That the van was traveling faster than the truck and had attempted to pass it more than once before the collision; that Cleveland reduced his speed to about twenty-five miles per hour when passing through Dunn and at the culvert he decided to stop the truck to ascertain the condition of its left front tire and to accomplish this purpose he there began to gradually reduce speed until when the accident occurred he was going not over ten miles per hour. He says he extended his left arm in token of his intention to stop but Sweeney says he did not see the signal. Plaintiffs were not in a position to have seen it. We do not think it important to a correct decision to make a finding on this point. It is certain the truck did not come to a sudden stop as testified to by plaintiffs and Sweeney. It could not have well done so with its heavy load without entailing serious consequences.
We further find that the truck traveled at least twice its length after the accident before coming to rest. Whether all four wheels were then on the pavement is a controverted question. This also we do not consider pivotal of the question of liability.
We also find that plaintiffs observed that the truck was slowing down immediately after passing over the culvert and that the van could have been stopped within seventy-five feet or eighty feet going at the speed admittedly maintained by it prior to the collision.
Plaintiffs and Sweeney testified that the truck's sudden stop forced Sweeney to suddenly veer to his left to avert running into the truck's rear end. We are not impressed with this version of facts. We do not think this is what happened. Cleveland and Arant, his coworker, riding with him, testified that the first knowledge they had of the van's presence was when its motor appeared opposite to that of the truck and about this time they heard the ambulance's horn sound as of alarm. There is one admitted physical fact which positively corroborates the testimony of Cleveland and Arant on this point. The right rear corner of the van when the collision occurred struck the left rear corner of the truck's bed. Signs of the contact were left on both vehicles. This fact makes inescapable the conclusion that the vehicles were traveling side by side with the front of the van ahead of the truck (in view of difference in lengths) when the collision occurred. And we find as an ultimate fact that Sweeney was endeavoring to pass the truck, not because the truck was slowing down, but because he desired to get ahead of it as he had endeavored to do previously. In executing the movements necessary to accomplish this purpose he inadvertantly failed to observe the ambulance until too late to avert the collision. *Page 510 
We are unable to perceive wherein the failure of Cleveland to signal his intention to stop, granting that he failed to do so, or the fact that his truck never left the pavement, if such were true, have any bearing upon the question of responsibility for the accident.
The Highway Regulatory Act (Section 3, Rule 15 of Act No. 21 of 1932, in effect when this accident occurred) deals with the question of stopping and parking motor vehicles on public highways. It does not require that a motorist drive his vehicle off of the pavement while slowing down preparatory to stopping. It simply requires that the vehicle be stopped off of the pavement if physical conditions permit; and, under no circumstances, be left on the highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the road opposite the vehicle be left for passage of cars, etc. Therefore, we absolve Cleveland from fault in connection with, or as a contributing cause of the accident.
For the reasons herein assigned, the judgments appealed from are annulled, avoided and reversed. Plaintiffs' suit is dismissed and their demand rejected at their cost.